Electronically FILED by Superior Court of California, County of Riverside on 05/19/2025 07:07 AM
Case Number CVRI2502964 0000129611632 - Jason B. Galkin, Executive Officer/Clerk of the Court By Stephanie Anderson, Clerk

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Todd M. Friedman, SBN 216752
21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364

TELEPHONE NO.: 323-306-4234 FAX NO.: 866-633-0228
EMAIL ADDRESS: tfriedman@toddflaw.com
ATTORNEY FOR *(Name):* Plaintiffs Terrance Wilson

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE**
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Riverside 92501
BRANCH NAME: Riverside Historic Courthouse

CASE NAME:
Terrance Wilson v. Conagra Brands, Inc.

## CIVIL CASE COVER SHEET

[x] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CVRI2502964
JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[x] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify)*: 2
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 19, 2025
Adrian R. Bacon, Esq.
(TYPE OR PRINT NAME)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

Electronically FILED by Superior Court of California, County of Riverside on 05/19/2025 07:07 AM
Case Number CVRI2502964 0000129611631 - Jason B. Galkin, Executive Officer/Clerk of the Court By Stephanie Anderson, Clerk

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiff, and all others similarly situated*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF RIVERSIDE**
**UNLIMITED JURISDICTION**

TERRANCE WILSON, individually, and on behalf of others similarly situated,

Plaintiff,

vs.

CONAGRA BRANDS, INC.

Defendant.

Case No. CVRI2502964

**CLASS ACTION COMPLAINT**

(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and
(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)

**Jury Trial Demanded**

**(Amount to exceed $35,000)**

Now comes the Plaintiffs, TERRANCE WILSON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her class action Complaint against the Defendant, CONAGRA BRANDS, INC. ("Defendant"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENTS**

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*., and Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq* resulting from the illegal actions of Defendant, in advertising and labeling its products as containing "no preservatives" when the products contain sodium phosphate. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**JURISDICTION AND VENUE**

2. This class action is brought pursuant to California Code of Civil Procedure § 382. All causes of action in the instant complaint arise under California statutes.

3. This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Riverside.

4. Venue is proper in this Court because Defendant does business *inter alia* in the county of Riverside and a significant portion of the conduct giving rise to Plaintiffs Claims happened here.

**PARTIES**

5. Plaintiff Terrance Wilson is an individual who was at all relevant times residing in Riverside County, California.

6. Defendant is a Delaware corporation headquartered in Chicago, Illinois.

7. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of pudding.

**FACTS COMMON TO ALL COUNTS**

8. Defendant manufactures, advertises, markets, sells, and distributes products throughout California and the United States under brand name Snack Pack.

9. During the Class Period Defendant labeled the following varieties of Snack Pack Pudding (the "Products") as containing "no preservatives" when they contain disodium phosphate:

a. Vanilla;

b. Chocolate vanilla;

c. Banana cream pie;

d. Butterscotch; and

e. Tapioca;

10. The United Stated Food and Drug Administration ("FDA") defines the term chemical preservative as: "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22.

11. Sodium phosphate salts are highly water-soluble inorganic salts and are added to foods to retard the deterioration thereof by preventing microbial growth and survival, lipid oxidation, and enzymatic browning to extend the shelf life of consumer food products.[1]

12. In basic terms, sodium phosphate salts extends the shelf-life of the Products by creating an environment inhospitable to bacteria growth.

13. Specifically, as depicted in the chart below, sodium phosphates are used as preservatives in puddings and custards:

[1] National Academies of Sciences, Engineering, and Medicine. Strategies to Reduce Sodium Intake in the United States, https://nap.nationalacademies.org/catalog/12818/strategies-to-reduce-sodium-intake-in-the-united-states.

TABLE 4-1 Common Sodium-Containing Compounds Used for Food Preservation

| Compound Name | Food to Which the Compound Is Added |
|---|---|
| Disodium ethylenediaminetetraacetic acid (EDTA) | Salad dressing, mayonnaise, canned seafood, fruit fillings |
| Sodium acetate | Baked goods, seafood |
| Sodium ascorbate | Meat products |
| Sodium benzoate | Beverages, fermented vegetables, jams, fruit fillings, salad dressings |
| Sodium dehydroacetate | Squash |
| Sodium diacetate | Condiments |
| Sodium erythorbate | Meat, soft drinks |
| Sodium lactate | Meat products |
| Sodium nitrate | Cured meats |
| Sodium nitrite | Cured meats |
| Sodium phosphates | Meat products, cheese, puddings or custards |
| Sodium propionate | Cheese, baked goods |
| Sodium sulfite | Fruit and vegetable products, seafood |

SOURCE: Doyle et al., 2001. [2]

14. On April 25, 2025, Plaintiff purchased one of the Products from a Target located in Riverside County, California.

15. When purchasing the Products Plaintiff made his purchasing decision because of the labeling on the Product that read "no preservatives".

16. Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims.

17. The following photos include examples of the Products' packaging including the relevant labeling:

[2] Doyle, M. P., L. R. Beuchat, and T. J. Montville, eds. 2001. Food microbiology: Fundamentals and frontiers. 2nd ed. Washington, DC: ASM Press

18. Plaintiff has been deprived of his legally-protected interest to obtain true and accurate information about the consumer products she buys as required by California Law.

19. As a result, Plaintiffs and the class members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would not contain preservatives.

20. Plaintiffs and the Class Members expected to receive the benefit of avoiding the negative potential effects of consuming preservatives, however they have been deprived of that benefit because the Products contain disodium phosphate.

21. Alternatively, Plaintiffs would not have purchased the Products in lieu of other similar Products without Defendant's misleading "no preservatives" label.

22. Plaintiffs and the Class Members paid a price premium to receive premium products that did not contain preservatives, instead Plaintiffs received non-premium products containing preservatives.

23. Plaintiff did not understand that the Products contained preservatives when he purchased them.

24. Furthermore, due to Defendant's intentional, deceitful practice of labeling the Products as containing "no preservatives", Plaintiff could not have known that the Products contained preservatives.

25. By making false and misleading claims about the qualities of the Products, Defendant impaired Plaintiffs' ability to choose the type and quality of the Products they chose to buy.

26. Worse than the lost money, Plaintiffs and the class members have been deprived of their protected interest to choose the type and quality of the products they ingest.

27. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products included preservatives, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products contained preservatives unless Defendant expressly told them, as required by law.

28. Plaintiffs regularly visit stores where the Products are sold and will likely be exposed to Defendant's "no preservatives" labeling in the future. However, unless Defendant is forced to correct the fraudulent labeling or remove the synthetic preservatives, Plaintiff will be unable to determine if Defendant's "no preservatives" label accurately reflects the true contents of the Products.

29. Plaintiffs believe that products without preservatives are superior in quality to products that contain preservatives, and desires to purchase Products that do not contain preservatives as Defendant advertised the Products to be.

30. Plaintiff may purchase the Products again in the future, and as a result they will be harmed if Defendant is not forced to correct the fraudulent labeling or remove the preservatives.

31. As a result of Defendants' acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a. Lost money;

b. Wasting Plaintiff's time; and

c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

**CLASS ALLEGATIONS**

32. Plaintiff brings this action on behalf of themselves and all others similarly situated, as members of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

33. Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed California sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the filing of the original Complaint through to the date of class certification.

34. Defendant, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believe the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

35. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant.

36. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

37. There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

    a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as containing "no preservatives" when the Products contain disodium phosphate;

    b. Whether the Class and Sub-Class members were informed that the Products contained disodium phosphate;

    c. Whether the Products contained disodium phosphate;

    d. Whether Defendant's conduct was unfair and deceptive;

      e.      Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

      f.      Whether the inclusion of disodium phosphate in the Products is a material fact;

      g.      Whether there should be a tolling of the statute of limitations; and

      h.      Whether the Class and Sub-Class are entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

38. As a resident of the United States and the State of California who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

39. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

41. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

42. The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

43. Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

44. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**COUNT I**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**On behalf of the Class and the Sub-Class**

45. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 49.

46. Pursuant to California Business and Professions Code section 17500, *et seq*., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

47. California Business and Professions Code section 17500, *et seq*.'s prohibition against false advertising extends to the use of false or misleading written statements.

48. Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products contained "no preservatives" and made false representations to Plaintiff and other putative class members in order to solicit these transactions.

49. Specifically, Defendant claimed the Products "no preservatives" when the Products contained disodium phosphate.

50. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class and Sub-Class Members.

51. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property. Plaintiff reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained preservatives. In reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiff and other

Class and Sub-Class Members purchased the Products. In turn Plaintiff and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiff and other Class Members have suffered injury in fact.

52. Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

53. Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products contain "no preservatives"

54. Defendant knew that the Class Products did in fact contain disodium phosphate.

55. Thus, Defendant knowingly sold Class Products to Plaintiff and other putative class members that contained disodium phosphate and were not as advertised.

56. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**COUNT II**
**VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**On behalf of the Class and Sub-Class**

57. Plaintiff incorporates by reference each allegation set forth above in paragraphs 1 through 49.

58. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct

created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

59. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

60. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

61. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class and Sub-Class.

62. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the Class Products contained "no preservatives" in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained disodium phosphate, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiff would receive from this feature is nonexistent, when this is typically never the case in situations involving consumer products. Thus, the injury suffered by Plaintiff and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

63. Finally, the injury suffered by Plaintiff and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, fraudulently labeled the Class Products as containing "no preservatives" the

Plaintiff, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiff and Class and Sub-Class members that the Class Products contained disodium phosphate and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to purchase the products. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

64. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

65. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

66. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

67. Here, not only were Plaintiff and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiff agreed to purchase Class Products at a price premium even though the Products contained disodium phosphate. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

68. As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products containing "no preservatives" when in fact the Products contain disodium phosphate.

69. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

70. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

71. As explained above, Defendant deceived Plaintiff and other Class Members by labeling the Products as containing "no preservatives" when in fact the Products contain disodium phosphate.

72. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

73. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiff and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

74. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class and Sub-Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**MISCELLANEOUS**

72. Plaintiff and Classes Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the Class and Sub-Class, requests the following relief:

(a) An order certifying the Class and Sub-Class and appointing Plaintiff as

Representative of the Class and Sub-Class;

(b) An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(c) An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(d) Actual damages suffered by Plaintiff and Class and Sub-Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class and Sub-Class Members from the sale of misbranded Class Products during the relevant class period;

(e) Punitive damages, as allowable, in an amount determined by the Court or jury;

(f) Any and all statutory enhanced damages;

(g) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h) Pre- and post-judgment interest; and

(i) All other relief, general or special, legal and equitable, to which Plaintiff and Class and Sub-Class Members may be justly entitled as deemed by the Court.

Dated: May 19, 2025

Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN, PC

By: ______________________
TODD M. FRIEDMAN, Esq.
Attorney for Plaintiff